ALFRED R. MASTERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Masters v. Commissioner
Docket Nos. 4171-86, 8169-87
United States Tax Court
T.C. Memo 1994-197; 1994 Tax Ct. Memo LEXIS 197; 67 T.C.M. (CCH) 2880; May 3, 1994, Filed *197 Alfred R. Masters, pro se. For respondent: Vallie C. Brooks and Frank C. McClanahan. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: These cases were consolidated for trial, briefing, and opinion, and were heard pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1]
Respondent determined deficiencies in petitioner's Federal income taxes, additions to tax, and additional interest as follows: Addi-
tional
Additions to Tax
Interest
Docket
Sec.
Sec.
Sec.
Sec.
Sec.
No.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6659
6661
6621(d) 4171
1981
$ 11,967.10
$   598.36
[1]
$   627.30
-
[2]
-86
8169
1982
40,749.00
2,037.45
[3]
1,716.00
$ 1,459.25
[4]
-87
*198 At issue in this proceeding are the portions of the deficiencies, additions to tax, and additional interest determined by respondent, which are attributable to petitioner's claimed loss and investment tax credit from a master recording leasing program known as the Mid-South Music Corp.Master Recordings Lease Program (the Mid-South program). [2] The issues for decision are (1) whether petitioner is entitled to the losses and credit [3] *199 claimed with respect to his lease of a master sound recording; (2) whether petitioner is liable for the additions to tax for negligence, valuation overstatement, and substantial understatement, and additional interest under section 6621(d) with respect to the master recording lease; and (3) whether petitioner is liable for the penalty under section 6673. [4]
Some of the facts were stipulated, and the stipulation of facts and attached exhibits are incorporated by this reference. Petitioner resided at Satellite Beach, Florida, when his petitions were filed. Mid-South Music Corporation (Mid-South) was organized in 1980 by Autry Inman (Mr. Inman) to promote the Mid-South program. Petitioner assisted in the promotion of the Mid-South program by contacting certified public accountants, financial advisers, and attorneys in North Carolina. He held seminars to disseminate promotional material and explain the benefits of the program to prospective investors and promoters. Pursuant to a lease agreement dated December 12, 1981, petitioner [5] purported to acquire from Mid-South a one-fourteenth interest in a master recording identified as "M S - 1804" by Hank Williams' Original Drifting Cowboys (the master). Drifting Cowboys was the band that played with Hank Williams on his recordings and on tour. One of the band members was Hillous Butrum (Mr. Butrum), president of the original owner of the master, *200 Dee Cee Productions, Inc. (Dee Cee). Mr. Butrum initially negotiated with a Canadian corporation for the sale of the master for $ 25,000 in December 1980. Those negotiations ended when the parties were unable to agree on the terms of payment. *201 Thereafter, Mr. Butrum discussed the sale of the master with Mr. Inman, whom he had known for a number of years, and informed him that the master could be purchased for $ 25,000. Mr. Inman told Mr. Butrum that Raymond Smith might be interested in buying the master. The master was acquired from Dee Cee by Kin-Folk Music, Inc. (Kin-Folk) for $ 25,000, pursuant to a purchase agreement dated December 31, 1981, signed by Raymond Smith as president of Kin-Folk. Kin-Folk, in turn, transferred the master to Mid-South under an agreement dated the same day, December 31, 1981, for the stated sum of $ 2,000,000, to be paid $ 25,400 in cash or certified check, and a promissory note in the amount of $ 1,974,600. No payment of principal or interest was due on the note for 12 years, except payment of 25 percent of the gross receipts Mid-South was to receive as rentals after the twelfth month from the date of the note. The lease agreement with Mid-South called for payment of "minimum rent first fifteen months" in the amount of $ 8,571.43 for the one-seventh interest in the master. Petitioner executed a promissory note dated December 31, 1981, payable to Masters Financial, Inc., for his half *202 of the $ 4,285.72 lease payment. An election was made to transfer investment tax credits attributable to the lease from the lessor to the lessee. On December 12, 1981, a manufacturer-distribution agreement (the distribution agreement) was executed with Romulus Records, Inc. (Romulus), granting a non-exclusive license to Romulus to manufacture and distribute recordings from the master. The distribution agreement called for payment of $ 1,428.57 (for the one-seventh interest) and 50 percent of the net receipts from sales with respect to the master. Petitioner executed a promissory note to Masters Financial on December 31, 1981, in the amount of $ 714.28 for his one-half of the payment to Romulus. Mid-South provided petitioner two appraisals of the master. The appraisal by Lawrence Broderick, dated December 14, 1981, concludes that the fair market value of the master on that date was $ 2,000,000. The appraisal by David Mathes also specifies that the value of the master as of December 1, 1981, was $ 2,000,000. Neither of the Mid-South appraisers testified at trial, and petitioner presented no expert witnesses or other evidence to support the claimed value of the master. Respondent's *203 expert witness, Richard Heard, produced a report appraising the one-seventh interest in the master at $ 875. Respondent argues that the fair market value of the master was $ 25,000, the amount paid to the original owner, Dee Cee Productions, Inc., in an arm's-length transaction in December 1981. We agree with respondent, and find that the fair market value of the master in December 1981, was $ 25,000. Petitioner bears the burden of proving that he is entitled to the claimed credit and deductions. Rule 142(a). Before determining whether a particular activity arises from or is connected with a trade or business, it must first be established that the transaction in question is bona fide and not a sham. A sham transaction is one that lacks economic substance beyond the creation of tax benefits. Knetsch v. United States, 364 U.S. 361, 365-366 (1960); Karr v. Commissioner, 924 F.2d 1018, 1022-1023 (11th Cir. 1991), affg. Smith v. Commissioner, 91 T.C. 733 (1988). We have examined the substance of the Mid-South transactions and conclude that they had no practicable economic effect other than *204 the creation of tax benefits. In reaching this conclusion, we found the following factors significant: (1) Tax benefits were the focus of the Mid-South promotional materials; (2) there is no evidence of negotiation of the price or terms of purchase between petitioner and Mid-South; (3) the value of the leasehold interest was substantially overvalued; (4) the master was acquired by Kin-Folk for $ 25,000 on the same date it was sold to Mid-South for a stated purchase price of $ 2,000,000; and (5) the bulk of the consideration was deferred by promissory notes that in substance or in fact were not likely to be paid. We find that petitioner's leasing activity was devoid of economic substance, lacked profit motive, and should be disregarded for tax purposes. Therefore, petitioner is not entitled to deductions for the lease payment made to Mid-South or the distributor fee paid to Romulus, and is not entitled to an investment tax credit. The next issues are petitioner's liability for additions to tax for negligence under section 6653, valuation overstatement under section 6659, and increased interest on tax-motivated transactions under section 6621(d). Section 6653(a)(1) imposes an addition *205 to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Respondent's determination that petitioner was negligent is presumed correct, and petitioner bears the burden of proving that he is not negligent. Rule 142(a). The loss and credit petitioner claimed with respect to the Mid-South program are based in large part on a purported loan which lacked economic substance. Petitioner contends that he was not negligent because he relied upon the attorneys who supplied tax opinions to Mid-South. While there are situations where reliance on expert or professional advice may satisfy the reasonable and prudent person standard, a taxpayer must establish that the person upon whom he or she relied is qualified to give *206 the advice. Further, the taxpayer must show that the adviser had sufficient knowledge of the facts to render a competent opinion. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S.    , 111 S.Ct. 2631 (1991). This petitioner has failed to show. The record before us simply does not support a finding that petitioner relied on the advice of competent and unbiased parties. Petitioner was one of the promoters of the Mid-South tax shelter. We cannot say that reliance on the advice of attorneys engaged by the promoter of the program amounts to reasonable and prudent conduct. Such reliance is not the type of activity which will overcome the addition to tax for negligence or intentional disregard of rules or regulations. Rybak v. Commissioner, 91 T.C. 524, 565 (1988); Patin v. Commissioner, 88 T.C. 1086, 1130 (1987), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989), *207 affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988). Respondent's determinations with respect to the additions to tax for negligence are sustained. Respondent determined that petitioner is liable for the addition to tax under section 6659 because the deficiency resulting from the Mid-South transaction was attributable to a valuation overstatement. Under section 6659, a valuation overstatement exists if the value of any property claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation. Sec. 6659(c)(1). If the valuation claimed exceeds 250 percent of the correct valuation, the addition to tax is equal to 30 percent of the underpayment, but only to the extent the underpayment is attributable to the valuation overstatement. Petitioner based his investment tax credit on the master's claimed cost of $ 2,000,000. When a transaction lacks economic substance, section 6659 will apply because the correct basis is zero and any basis claimed in excess of that is *208 a valuation overstatement. Gilman v. Commissioner, 933 F.2d 143 (2d Cir. 1991), affg. T.C. Memo. 1990-205; Rybak v. Commissioner, supra at 524; Donahue v Commissioner, T.C. Memo. 1991-181, affd. without published opinion 959 F.2d 234 (6th Cir. 1992), affd. sub nom. Pasternak v. Commissioner, 990 F.2d 893 (6th Cir. 1993). This Court and others have found section 6659 applicable when credits are disallowed in their entirety due to a lack of economic substance or lack of profit objective, when valuation is an integral factor in such determinations. We hold that petitioner is not entitled to any investment tax credit for the master. Section 6659 does not apply to underpayments of tax which are not "attributable to" valuation overstatements. See Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988). The lease payment and distributor fee paid by petitioner are not dependent upon valuation of the master. Therefore, these deductions *209 are not attributable to a valuation overstatement, and are not subject to the addition to tax under section 6659. Soriano v. Commissioner, 90 T.C. 44, 62 (1988). Section 6661(a) imposes an addition to tax if there is a substantial understatement of income tax. A "substantial understatement" is defined as an understatement which exceeds the greater of $ 5,000 or 10 percent of the amount of tax required to be shown on the return. Sec. 6661(b)(1). Any portion of the understatement that is also subject to the addition to tax under section 6659 for valuation understatement is not taken into account in determining the substantial understatement of tax for purposes of section 6661. Sec. 6661(b)(3). In calculating understatements under section 6661(a), items for which there is substantial authority or with respect to which all relevant facts were adequately disclosed on the tax return, are not to be considered. Sec. 6661(b)(2)(B). However, in the case of a tax shelter, even full disclosure in the tax return does not reduce this addition to tax. Sec. 6661(b)(2)(C)(i). For this purpose, section 6661(b)(2)(C)(ii) defines a tax shelter as any partnership, *210 entity or other plan or arrangement the principal purpose of which is the avoidance of Federal income tax. The Mid-South program is a tax shelter for purposes of section 6661. The disallowed Schedule C deductions for lease payment and distributor fee will be considered for purposes of determining whether the section 6661 understatement of tax threshold has been reached, but the portion of the deficiency attributable to the investment tax credit, which is subject to the section 6659 addition to tax, will be excluded. Then, if the threshold of the greater of $ 5,000 or 10 percent of the tax is met, the section 6661 addition will apply. Respondent determined that petitioner is liable for increased interest under section 6621(d). Section 6621(d) provides for an interest rate of 120 percent of the rate established under section 6621 if there is a substantial underpayment (an underpayment which exceeds $ 1,000) in any taxable year attributable to one or more "tax motivated transactions". The increased interest rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to that date. Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), *211 affd. without published opinion 795 F.2d 1005 (2d Cir. 1986). We conclude that the Mid-South lease transaction was a tax-motivated transaction, and therefore hold that section 6621(d) is applicable. Respondent's opening statement on the record suggested that this case was an appropriate one in which we should require petitioner to pay a penalty under section 6673. After trial, the Court granted respondent's motion for leave to file an amendment to answer raising the section 6673 penalty. The Court granted the motion and the amended answer was filed. We will treat respondent's statement at trial as an oral motion to require petitioner to pay a penalty to the United States. Section 6673, as amended by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7731(a), 103 Stat. 2106, 2400, provides, in pertinent part: (1) Procedures instituted primarily for delay, etc. -- Whenever it appears to the Tax Court that -- (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (B) the taxpayer's position in such proceeding is frivolous or groundless, or
* * * the Tax Court, in its decision, *212 may require the taxpayer to pay the United States a penalty not in excess of $ 25,000.
The record in this case establishes that petitioner had reason to know his position would not be successful. The United States District Court for the Middle District of Tennessee issued a Memorandum Opinion on September 20, 1985, finding that Mid-South and Mr. Inman, in organizing and promoting the Mid-South Music Corporation Recordings Lease Program in 1980, and similar programs in 1981-1983, inclusive, had promoted an abusive tax shelter within the meaning of section 6700. Both Mid-South and Mr. Inman were enjoined by the District Court from promoting the Mid-South master recording leasing program. United States v. Mid-South Music Corp., 624 F. Supp. 673 (M.D. Tenn. 1985). The District Court's opinion in the Mid-South case was issued prior to the February 14, 1986, filing of the petition in docket No. 4171-86, and the March 30, 1987, filing of the petition in docket No. 8169. A similar program, the Music Masters, Ltd. Master Sound Recording Lease Program (the Music Masters program), was organized and promoted by petitioner during 1982 and 1983. Petitioner *213 was enjoined from promoting the Music Masters program by the United States District Court for the Western District of North Carolina on November 12, 1985. This Court found the Music Masters program to be generic tax shelter from which no deductions or credits were allowable in Maultsby v. Commissioner, T.C. Memo. 1989-659 and Hunt v. Commissioner, T.C. Memo. 1989-660, affd. 938 F.2d 466 (4th Cir. 1991). Finally, in connection with the Music Masters program, petitioner was convicted under section 7206(2) of knowingly and willingly aiding and assisting the preparation of Federal income tax returns for Music Masters, Ltd., in which false depreciation deductions were claimed, and the preparation of 21 individual income tax returns in which false investment tax credits were claimed. A petition to the Tax Court is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986), affg. in part an unreported order of this Court. Based upon the numerous cases *214 involving similar master recording tax shelters, including two such cases involving a master recording tax shelter organized and promoted by petitioner, petitioner's position is frivolous and groundless. Petitioners with genuine controversies were delayed while we considered this case. Accordingly, we will grant respondent's oral motion for damages and require petitioner to pay a penalty to the United States in the amount of $ 1,500. Coulter v. Commissioner, 82 T.C. 580 (1984); Abrams v. Commissioner, 82 T.C. 403 (1984). An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the deficiency.↩
2. 120 percent of the interest due on $ 3,963.↩
3. 50 percent of the interest due on $ 11,558.↩
4. 120 percent of the interest computed on $ 5,712.↩
2. The remaining determinations in the notice of deficiency were not considered at the trial of the Mid-South Music Corp. issues.↩
3. Respondent's determinations attributable to the Mid-South program for petitioner's 1981 taxable year are the disallowance of a claimed Schedule C loss in the amount of $ 5,000, consisting of lease expenses and advertising expenses in the respective amounts of $ 4,285 and $ 714, and disallowance of investment tax credit in the amount of $ 14,286. The determination attributable to the Mid-South program for petitioner's 1982 taxable year is disallowance of petitioner's carryforward of investment tax credit from 1981 in the amount of $ 12,195.↩
4. This issue was raised in respondent's amended answer.↩
5. The lease agreement and other documents pertaining to the master recording were originally executed by John W. Olive on behalf of Masters Financial, Inc., and concern a one-seventh interest in the master. Petitioner testified that Master Financial, Inc., was erroneously identified as the lessee instead of petitioner and Mr. Olive individually, and that the error was corrected by amended documents reflecting petitioner's one-fourteenth individual interest. In her brief, respondent notes that "for purposes of this case, respondent will assume that the leasehold interest at issue should have been in the name of petitioner and Mr. Olive and not their corporation, Masters Financial, Inc." Accordingly, for convenience, petitioner will be referred to as the party in interest in our discussion of the various documents involved, although such documents were executed in the name of Masters Financial, Inc.↩