T.C. Memo. 1995-533

UNITED STATES TAX COURT

ALBERT R. AND PHYLLIS F. DWORKIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 34384-87.                    Filed November 9, 1995.

Albert R. Dworkin, pro se.

<u>Mae J. Lew</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Norman H. Wolfe pursuant to the provisions of section
7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court agrees with

---

[1]    All section references are to the Internal Revenue Code, in
effect for the year in issue, unless otherwise stated.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

WOLFE, Special Trial Judge: This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993). The underlying transaction in this case is substantially identical to the transaction considered in the Provizer case.

In a notice of deficiency, respondent determined a deficiency in petitioners' joint 1981 Federal income taxes in the amount of $83,294, and additions to tax for that year in the amount of $21,296 under section 6659 for valuation overstatement, in the amount of $4,165 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment attributable to negligence. Respondent also determined that interest on deficiencies accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c).[2]

---

[2] The notice of deficiency refers to sec. 6621(d). This section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744 and repealed by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2106, 2399, effective for tax returns due after Dec. 31, 1989, OBRA 89 sec. 7721(d), 103 stat. 2400. The repeal does not affect the instant
(continued...)

On February 22, 1994, the parties filed a Stipulation of Settled Issues with respect to petitioners' 1981 Federal income tax return. The parties stipulated that petitioners are not entitled to any deductions, losses, investment tax credits, business energy credits, or any other tax benefits claimed on their tax returns as a result of their participation in the "Plastics Recycling Program". The parties further stipulated that the underpayments in income tax attributable to petitioners' participation in the "Plastics Recycling Program" are substantial underpayments attributable to tax motivated transactions, subject to the increased rate of interest established under section 6621(c).

On March 21, 1994, the parties filed a Partial Stipulation of Settlement regarding interest income. The parties stipulated that interest income from accounts with the Irving Trust Co. in the amount of $1,271, and interest income from Emigrant Savings Bank account number 2-5054650-4, in the amount of $2,000 is includable in petitioners' taxable income for tax year 1981. The parties also stipulated that interest income from Emigrant Savings Bank account number 2-5054650-4, in the amount of $2,000

---

[2](...continued)
case. For simplicity, we will refer to this section as sec. 6621(c). The annual rate of interest under sec. 6621(c) for interest accruing after Dec. 31, 1984, equals 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.

is not includable in petitioners' taxable income for tax year 1981. Lastly, the parties stipulated that sections 6653, 6661, and 6621(c) were not applicable to any of the adjustments set forth in the Partial Stipulation of Settlement.

After trial, respondent conceded a reduction in the section 6659 addition to tax for 1981. In the notice of deficiency, respondent determined a section 6659 addition to tax in the amount of $21,295. In her reply brief, respondent asserted that the section 6659 addition to petitioners' tax for 1981 should be reduced to $19,083. We consider that respondent has conceded the addition to tax under section 6659 for 1981 in excess of the amount of such addition to tax in dispute as set forth in respondent's reply brief.

The issues for decision with respect to petitioners' Federal income tax for 1981 are: (1) Whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2); and (2) whether petitioners are liable for the addition to tax under section 6659 for an underpayment of tax attributable to valuation overstatement.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners resided in Longboat Key, Florida, when their petition was filed.

During 1981, Albert R. Dworkin (petitioner) was a semi-retired certified public accountant (C.P.A.) and an investor in real estate and other entities. His spouse, petitioner Phyllis F. Dworkin, was not employed outside the home during 1981. On their 1981 Federal income tax return, petitioners reported gross income from interest, dividends, business, capital gains, and other sources in excess of $196,500. Consequently, in the absence of significant deductions or credits, they were subject to payment of Federal income taxes in substantial amounts.

The facts of the underlying transaction in this case are substantially identical to those in Provizer v. Commissioner, supra, and may be summarized as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold seven Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $6,867,000 ($981,000 each), of which $530,000 was paid in cash. ECI Corp., in turn, resold the recyclers to F & G Corp. for $8,138,667 ($1,162,666 each), of which $615,000 was paid in cash. F & G Corp. then leased the recyclers to Northeast Resource Recovery Associates (Northeast), a limited partnership, which licensed the recyclers to FMEC Corp., which sublicensed them back to PI. All of the monthly payments required among the entities in the above transactions offset each other. These transactions were done simultaneously. We refer to these transactions collectively as the Northeast transaction.

In Provizer v. Commissioner, supra, we examined the Clearwater transaction. In the Clearwater transaction, PI sold six EPE recyclers to ECI Corp. for $981,000 each, which in turn resold the recyclers to F & G Corp. for $1,162,666 each. F & G leased the recyclers to a limited partnership, Clearwater, which licensed them to FMEC, which sublicensed them to PI. The transaction involved herein differs in two respects: (1) Seven Sentinel EPE recyclers were sold and leased rather than six; and (2) Northeast, rather than Clearwater, leased the recyclers from F & G and then licensed them to FMEC. Northeast is thus like Clearwater, occupying the same link in the transactional chain. In addition, the Sentinel EPE recyclers considered in this case are the same type of machines considered in the Provizer case. The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000.

PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC Corp. based on the quality and amount of recycled scrap.

In 1981, petitioner acquired a 3.908-percent limited partnership interest in Northeast in exchange for his investment of $37,500. As a result of the passthrough from Northeast, petitioners deducted on their 1981 Federal income tax return an operating loss in the amount of $30,510 and claimed investment

tax and business energy credits totaling $63,612. Respondent disallowed petitioners' claimed operating loss and credits related to Northeast for taxable year 1981.

Petitioner Albert Dworkin is a well-educated and sophisticated businessman, investor, and tax professional. Petitioner received a B.S. degree from New York University and an LL.B. degree from Fordham Law School. He is a certified public accountant (C.P.A.) and has been admitted to the New York bar. Petitioner was employed as an internal revenue agent from 1941 to 1945. In 1945 he joined the accounting firm of David Berdon & Co.; he became a partner in that firm in 1952. While at David Berdon & Co., petitioner represented clients by assisting Federal examiners in income and estate tax return examinations; resolved disputes at the District Conference and Appeals Office levels of the Internal Revenue Service (IRS); supervised and assisted in the preparation of tax returns; and researched and drafted memoranda addressing tax issues. For a number of years, petitioner was also a member of the Federal Taxation Committee of the American Institute of Certified Public Accountants.

Petitioner left David Berdon & Co. in 1970. He has since acted as a consultant, engaged in various business matters, and made numerous business investments. Between 1952 and 1980 petitioner held minority interests in 16 different unincorporated entities. Two of these were oil drilling operations and 14 were real estate interests. From 1977 to 1988 petitioner held

fractional interests in four oil wells in Alberta, Canada. Petitioner also invested as a limited partner in five other unincorporated entities from 1983 to 1988. Three of these were real estate ventures, one involved oil wells and the last involved equipment leasing. Over the course of his career petitioner has examined a large number of private placement offering memoranda and has participated in the preparation of such memoranda.

In 1981, petitioner learned of the Northeast transaction from Raymond Grant (Grant). Petitioner first became acquainted with Grant about 1946 when they both worked for David Berdon & Co. in New York City. After about 2 years, Grant left David Berdon & Co. to enter the mutual fund business. Grant became general counsel and senior vice president at Waddell & Reed, a large mutual fund organization in Kansas City. He returned to New York in the mid-1970's. At that time Grant became a member of the same tennis and social club as petitioner. During 1981 Grant was an investment banker, an attorney, and an accountant. He was also the president and 100 percent owner of the stock of ECI.

After learning of the Northeast transaction from Grant, petitioner spoke with Richard Roberts (Roberts), a businessman and the general partner in Northeast. Roberts was a 9-percent shareholder in F & G and the general partner in a number of limited partnerships which leased Sentinel EPE recyclers. Grant

and Roberts were general partners together in other investments and maintained an office together in New York City. During 1981 Roberts served as second vice chairman of the Mountain Ridge State Bank (Mountain Ridge) in West Orange, New Jersey.

As general partner, Roberts was personally responsible for the full amount due on the Northeast partnership lease. Petitioner contacted Roberts to discuss the Northeast transaction. Petitioner was provided a copy of Roberts' individual financial statement dated August 20, 1981. The financial statement showed a net worth for Roberts in the amount of $3,830,000. Petitioner asked his banker, Joseph Dowding (Dowding), to run a background check on Roberts and Mountain Ridge. Dowding reported that Mountain Ridge was a small bank and that its president had told him that Roberts had a fine business reputation. Also, a financial statement for Mountain Ridge was forwarded to petitioner.

Petitioner was provided a copy of the offering memorandum for Northeast. The offering memorandum summarized the Northeast transaction and detailed the tax risk factors, business risk factors, and the business of the partnership, inter alia. The offering memorandum unambiguously disclosed that both Grant and Roberts were promoters of Northeast. Appendices to the memorandum include reports of F & G's evaluators, Stanley M. Ulanoff and Samuel Z. Burstein, and a draft letter of counsel regarding the tax risks associated with Northeast. Petitioner

asked some New York City attorneys about the New York law firm that prepared the draft opinion letter and was satisfied with its reputation. The preface to the offering memorandum contained the following emphasized admonition: THIS MEMORANDUM AND ATTACHED APPENDICES IS AN INTEGRAL DOCUMENT AND MUST BE READ IN ITS ENTIRETY.

Petitioner had no education or work experience in plastics recycling or plastics materials. Petitioner did not conduct any independent research as to the value of the Sentinel EPE recyclers. Petitioner did not contact either Mr. Ulanoff or Mr. Burstein regarding their evaluation of the recyclers, and did not contact any other expert on plastics or engineering.

OPINION

In Provizer v. Commissioner, T.C. Memo. 1992-177, a test case involving the Clearwater transaction, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). In reaching the conclusion that the Clearwater transaction lacked economic

substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers.

Although petitioners have not agreed to be bound by the Provizer opinion, they have stipulated that petitioner's investment in the Sentinel EPE recyclers was similar to the investment described in Provizer v. Commissioner, supra. The underlying transaction in this case (the Northeast transaction) is in all material respects identical to the transaction considered in the Provizer case. The Sentinel EPE recyclers considered in this case are the same type of machines considered in the Provizer case.

Based on the entire record in this case, including the extensive stipulations, testimony of respondent's experts, and cross-examination of them, and petitioner's testimony, we hold that the Northeast transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Respondent is sustained on the question of the underlying deficiency. We note that petitioner has explicitly conceded this issue in a Stipulation of Settled Issues filed shortly before trial. The record plainly supports respondent's determination regardless of such concession. For a detailed discussion of the facts and the applicable law in a substantially identical case, see Provizer v. Commissioner, supra.

Issue 1:  Sec. 6653(a) Negligence

Respondent determined that petitioners were liable for the additions to tax under section 6653(a). Petitioners have the burden of proving that respondent's determination of an addition to tax is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. In cases involving negligence, an additional amount is added to the tax under section 6653(a)(2); such amount is equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973).

Petitioner contends that he was reasonable in claiming deductions and credits with respect to his investment in Northeast and asserts that the instant case is distinguishable from Provizer v. Commissioner, supra, in that: (1) Petitioner acted reasonably and exercised due diligence in relying on Grant, Roberts, and the draft opinion letter in the offering memorandum;

and (2) petitioners' intent in making the investment was to obtain a stream of rental income generated from the resale and reuse of recycled plastic.

When petitioners claimed the disallowed deductions and tax credits, they had no knowledge of the plastics or recycling industries and no engineering or technical background. Petitioner did not independently investigate the economic potential of the Sentinel EPE recyclers.

Under some circumstances a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if reasonable reliance on a competent professional adviser is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see Weis v. Commissioner, 94 T.C. 473, 487 (1990); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974).

Reliance on representations by insiders, promoters, or offering materials has been held an inadequate defense to negligence. LaVerne v. Commissioner, 94 T.C. 637, 652-653

(1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); McCrary v. Commissioner, 92 T.C. 827, 850 (1989); Rybak v. Commissioner, 91 T.C. 524, 565 (1988). We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447.

Petitioner first learned of the Northeast transaction from Grant. Grant and petitioner worked in the same accounting firm for 2 years in the late 1940's, and they were members of the same tennis and social club during the late 1970's. Petitioner explained that "The Shelter Rock Tennis Club was a country club based on tennis. It had a restaurant and a bar, and it was a social center for its members." Petitioner stated that he and Grant played tennis together and shared social acquaintances, and that Grant "lived quite well, somewhat expensively." Petitioner also noted that he and Grant's brother-in-law had been partners in the same accounting firm. Petitioner was aware that Grant had no background knowledge or expertise in the plastics recycling area.

Petitioner testified that before petitioner invested in Northeast, Grant told him that he had investigated the Sentinel EPE recyclers and that the recycling machine "was to the best of his knowledge truly unique." Petitioner testified that, given Grant's statement, he thought the question of the price of a comparable machine was academic. Petitioner argues that there should have been no comparable machine. In fact, there were at least four other plastics recycling machines available during 1981, ranging in price from $20,000 to $200,000: Foremost Densilator, Nelmor/Weiss Densification System (Regenolux), Buss-Condux Plastcompactor, and Cumberland Granulator. See Provizer v. Commissioner, supra.

Petitioner also contacted Roberts. Petitioner testified that because Grant and Roberts shared office space and engaged in business transactions together, petitioner presumed that Grant considered Roberts to be a person of suitable moral character and business competence. Petitioner also stated that he asked Roberts whether he expected the IRS to question the price of the recyclers for the tax credits. According to petitioner, Roberts told him he would not be surprised if the IRS questioned the purported price of the Sentinel EPE recyclers, but that he believed there would be a compromise reducing the amount of valuation by less than 20 percent. Petitioner accepted Roberts' statement without further question.

Petitioner also claims that he reasonably relied upon the conclusions of the draft opinion letter. Petitioner contends that the nonrecourse nature of F & G's note was not readily apparent in the draft opinion letter and that he would not have made the investment had he been aware that the note was nonrecourse. However, the nonrecourse nature of the note was clearly stated in two different sections of the main body of the offering memorandum.[3] One section was headlined "Price of the Sentinel Recyclers To F & G and Payment Terms" and the other was headlined "F & G's Purchase of the Sentinel Recyclers".

Petitioner's reliance on Grant and Roberts, two promoters of Northeast, was not reasonable, in good faith, nor based upon full disclosure. The record does not show that either Grant or Roberts possessed any special qualifications or professional skills in the recycling or plastics industries. Petitioner's stated reliance on Grant in making a substantial investment in a complex transaction stemmed from nothing more than a 2-year shared work environment in the late 1940's and membership in the same country club and social group for a few years during the late 1970's. Petitioner's reliance on Roberts derived almost

---

[3] According to the purchase agreement as described in the Northeast offering memorandum, of the $8,138,667 purchase price, F & G would pay $615,000 in cash at closing, with the balance to be paid with a "partial recourse note." Ten percent of the note would be full recourse, but such recourse portion would only be due and payable after the nonrecourse portion of the note had been satisfied.

entirely from petitioner's acquaintance with Grant. As to petitioner's reliance on the offering memorandum, the record indicates that petitioner either did not read the offering memorandum in its entirety or was careless when doing so.

Petitioners' reliance on Epsten v. Commissioner, T.C. Memo. 1991-252, is misplaced. The taxpayers in Epsten invested in a grantor trust that sold and leased IBM computers. The activities of the trust were not an economic sham; they had economic substance. There was a reasonable possibility of an economic profit to both the trust and the taxpayers apart from the attendant tax benefits. Both the trust and the taxpayers had an actual and honest profit objective with respect to the transactions at issue. While the taxpayers in the Epsten case conceded disallowance of the tax benefits because they were not at risk pursuant to section 465, the Court did not find them negligent under section 6653(a). However, it was not the taxpayers' reliance on the offering memorandum and other documents that absolved them of negligence. Rather, at the time of their investment there was little case law interpreting the recently enacted section 465(b)(4). Consequently, there were no indications that the professional advice given the taxpayers was not reasonable.

In the instant case, petitioners invested in a transaction that had no economic substance, and neither they nor Northeast could have reasonably expected to realize an economic profit.

There was ample case law and commentary at the time of petitioners' investment addressing the disallowance of tax benefits flowing from transactions lacking economic substance. Indeed, petitioner testified that had he been aware of the nonrecourse nature of the debt issued by F & G he would not have invested in Northeast. Yet the nonrecourse nature of the debt issued by F & G was unambiguously disclosed in multiple sections of the offering memorandum. More significantly, the transaction here was a sham, and that was not the case in Epsten. Here petitioner accepted an inflated value of $1,162,666 each for machines with an actual value not in excess of $50,000, and petitioner made no investigation of the valuation. The Epsten case, involving the interpretation of recently enacted law, does not support petitioners' investment in a sham transaction involving inflated valuations without investigation.

Finally, petitioners argue that they had a business motive for their investment in Northeast, independent of any tax benefits. Their alleged intent in making the investment was to obtain a stream of rental income generated from the resale and reuse of recycled plastic. Petitioner was aware that plastics were oil derivatives. Petitioner argues, in general terms, that because of the media coverage of a supposed oil crisis in the United States during 1981, he believed that an investment in plastics recycling had good economic potential. In addition,

petitioner argues that the Federal Government, by virtue of the energy tax credit, was encouraging this type of investment.

Petitioner failed to explain how the so-called oil crisis, or the media coverage thereof, provided a reasonable basis for him to invest in Northeast and claim the associated tax deductions and credits. Instead, he testified that he made the decision with respect to Northeast "primarily as a speculation". The offering memorandum noted several business risks associated with Northeast, including the circumstances that there was no established market for the recyclers, that there could be no assurances that the recycled resin pellets would be marketable as new resin pellets, and that there could be no assurances that prices for new resin pellets would remain at their then current level. Moreover, during 1980 and 1981, in addition to the media coverage of the so-called oil crisis, there was "extensive continuing press coverage of questionable tax shelter plans." Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Furthermore, as respondent's expert Grossman noted in his written report, "a 300% increase in crude oil prices results in only a 30 to 40% increase in the cost of plastic products."

The anticipated tax benefits, on the other hand, were stated in the offering materials. According to the Northeast offering memorandum, the projected benefits for each $50,000 investor were investment tax credits in 1981 of $84,813 plus deductions in 1981

of $40,174. In the first year of the investment alone, petitioners claimed an operating loss in the amount of $30,510 and investment tax and business energy credits related to Northeast totaling $63,612, while petitioners' investment in Northeast was only $37,500. The direct reductions in their Federal income tax, via the tax credits, equaled 170 percent of their cash investment. Therefore, like the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, "except for a few weeks at the beginning, petitioners never had any money in the [Northeast] deal." A reasonably prudent person would not conclude without substantial investigation that the Government was providing tax benefits so disproportionate to the taxpayers' investment of their own capital. A reasonably prudent person would have asked a qualified independent tax adviser if this windfall were not too good to be true. McCrary v. Commissioner, 92 T.C. 827, 850 (1989).

Petitioners have not distinguished their situation from that of the taxpayers in Provizer v. Commissioner, supra, where the negligence additions to tax were upheld. We hold, upon consideration of the entire record, that petitioners are liable for the negligence additions to tax under the provisions of section 6653(a)(1) and (2). Respondent is sustained on this issue.

Issue 2:  Sec. 6659 Valuation Overstatement

Respondent determined that petitioners are liable for the section 6659 addition to tax on the portion of their 1981 underpayment attributable to valuation overstatement.  In respondent's notice of deficiency, the addition to tax under section 6659 was applied to the entire amount of the disallowed loss and credits, resulting in a section 6659 addition to tax in the amount of $21,296.  Respondent subsequently reduced the section 6659 addition to tax to apply only to the underpayment attributable to the disallowed credits.  Respondent asserted in her reply brief a reduced section 6659 addition to petitioners' tax for 1981 in the amount of $19,083.  We consider the addition to tax under section 6659 for 1981 reduced to correspond to the amount in dispute as set forth in respondent's reply brief.

A graduated addition to tax is imposed when an individual has an underpayment of tax that equals or exceeds $1,000 and "is attributable to" a valuation overstatement.  Sec. 6659(a), (d).  A valuation overstatement exists if the fair market value (or adjusted basis) of property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount.  Sec. 6659(c).  If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment.  Sec. 6659(b).

Petitioners claimed an investment tax credit and a business energy credit based on purported values of $1,162,666 for each

Sentinel EPE recycler.  Petitioners concede that the fair market value of each recycler was not in excess of $50,000.  Therefore, if disallowance of petitioners' claimed credits is attributable to the valuation overstatement, petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the credits claimed with respect to Northeast.

Section 6659 does not apply to underpayments of tax that are not "attributable to" valuation overstatements.  See McCrary v. Commissioner, 92 T.C. 827 (1989); Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988).  To the extent taxpayers claim tax benefits that are disallowed on grounds separate and independent from alleged valuation overstatements, the resulting underpayments of tax are not regarded as attributable to valuation overstatements.  Krause v. Commissioner, 99 T.C. 132, 178 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994), citing Todd v. Commissioner, supra.  However, when valuation is an integral factor in disallowing deductions and credits, section 6659 is applicable.  See Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992), affg. T.C. Memo. 1991-449; Masters v. Commissioner, T.C. Memo. 1994-197; Harness v. Commissioner, T.C. Memo. 1991-321; see Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991), affg. T.C. Memo. 1989-684.

In the Stipulation of Settled Issues, petitioners conceded that they "are not entitled to any deductions, losses, investment credits, business energy investment credits, or any other tax benefits claimed on their tax returns as a result of their participation in the Plastics Recycling Program." In Todd v. Commissioner, supra, and McCrary v. Commissioner, supra, we denied application of section 6659, even though the subject property was overvalued, because the related deductions and credits had been conceded or denied in their entirety on other grounds. In Todd we found that an underpayment was not attributable to a valuation overstatement because property was not placed in service during the years in issue. In McCrary we found the taxpayers were not liable for the section 6659 addition to tax when, prior to the trial of the case, the taxpayers conceded that they were not entitled to the investment tax credit because the agreement in question was a license and not a lease. In both cases the underpayment was attributable to something other than a valuation overstatement.

This Court has held that concession of the investment tax credit in and of itself does not relieve taxpayers of liability for the section 6659 addition to tax. Dybsand v. Commissioner, T.C. Memo. 1994-56. Instead, what is significant is the ground upon which the investment tax credit is disallowed or conceded. Id.

In petitioners' case, there was no argument made and no evidence presented to the Court to prove that disallowance and concession of the investment tax credits related to anything other than a valuation overstatement. To the contrary, petitioners stipulated substantially the same facts concerning the underlying transactions as we found in Provizer v. Commissioner, T.C. Memo. 1992-177. In the Provizer case, we held that the taxpayers were liable for the section 6659 addition to tax because the underpayment of taxes was directly related to the overvaluation of the Sentinel EPE recyclers. The overvaluation of the recyclers, exceeding 2325 percent, was an integral part of our findings in Provizer that the transaction was a sham and lacked economic substance. Similarly, the record in this case plainly shows that the overvaluation of the recyclers is integral to and is the core of our holding that the underlying transaction here was a sham and lacked economic substance.

Consistent with our findings in Provizer, petitioners stipulated that the Northeast partnership had no net equity value, that Northeast's sole activity lacked any potential for profit, and that the Northeast transaction therefore lacked economic substance. When a transaction lacks economic substance, section 6659 will apply because the correct basis is zero and any basis claimed in excess of that is a valuation overstatement. Gilman v. Commissioner, supra; Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988); Zirker v. Commissioner, 87 T.C. 970, 978-979

(1986); <u>Donahue v. Commissioner</u>, T.C. Memo. 1991-181, affd. without published opinion 959 F.2d 234 (6th Cir. 1992), affd. sub nom. <u>Pasternak v. Commissioner</u>, 990 F.2d 893 (6th Cir. 1993).

We held in <u>Provizer v. Commissioner</u>, <u>supra</u>, that each Sentinel EPE recycler had a fair market value not in excess of $50,000. Our finding in the <u>Provizer</u> case that the Sentinel EPE recyclers had been overvalued was integral to and inseparable from our finding of a lack of economic substance. Petitioners conceded that the Northeast transaction was similar to the Clearwater transaction described in <u>Provizer v. Commissioner</u>, <u>supra</u>, and that the Northeast transaction lacked economic substance. Given those concessions, and the fact that the record here plainly shows that the overvaluation of the recyclers was the principal reason for the disallowance and concession of the investment tax credits, we conclude that the deficiency caused by the disallowance of the investment credits was attributable to the overvaluation of the Sentinel EPE recyclers.

Finally, we consider petitioners' express argument as to waiver of the penalty. At trial and on brief, petitioners contested imposition of the section 6659 addition to tax on the grounds that respondent erroneously failed to waive the penalty. Section 6659(e) authorizes respondent to waive all or part of the addition to tax for valuation overstatements if taxpayers establish that there was a reasonable basis for the adjusted bases or valuations claimed on the returns and that such claims

were made in good faith. Respondent's refusal to waive a section 6659 addition to tax is reviewable by this Court for abuse of discretion. Krause v. Commissioner, supra at 179.

Petitioners urged that they relied on Grant, Roberts, and the offering memorandum in deciding on the valuation claimed on their tax return. Petitioners contend that such reliance was reasonable and, therefore, respondent should have waived the section 6659 addition to tax.

We have found that petitioner's purported reliance on Grant, Roberts, and the offering memorandum was not reasonable. Grant and Roberts were promoters of Northeast and knew nothing about plastics or plastics recycling. See Vojticek v. Commissioner, T.C. Memo. 1995-444, to the effect that advice from such persons "is better classified as sales promotion". The evaluators whose reports were appended to the offering memorandum each owned interests in partnerships which leased Sentinel EPE recyclers. The offering memorandum contained numerous caveats, including the following: NO OFFEREE SHOULD CONSIDER THE CONTENTS OF THIS MEMORANDUM *** AS *** EXPERT ADVICE. EACH OFFEREE SHOULD CONSULT HIS OWN PROFESSIONAL ADVISERS. Petitioner did not see a Sentinel EPE recycler prior to investing in Northeast, nor did he independently investigate the recyclers.

Petitioners did not have a reasonable basis for the adjusted bases or valuations reflected on their 1981 return with respect to their investment in Northeast. Accordingly, in this case

respondent was correct in finding that petitioner's reliance on the appraisal in the promotional materials was unreasonable. The record in this case does not establish an abuse of discretion on the part of respondent but supports respondent's position. We hold that respondent's refusal to waive the section 6659 addition to tax is not an abuse of discretion. Petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credits for 1981. Respondent is sustained on this issue.

<u>Decision will be entered</u>

<u>under Rule 155</u>.