T.C. Memo. 1995-582

UNITED STATES TAX COURT

LEON AND BELLE ATKIND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20539-89.               Filed December 6, 1995.

<u>Neil L. Prupis</u>, for petitioners.

<u>Louise Forbes</u> and <u>William T. Hayes</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court agrees with

---

[1]   All section references are to the Internal Revenue Code, in effect for the year in issue, unless otherwise indicated.  All Rule references are to the Tax Court Rules of Practice and
(continued...)

and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

WOLFE, Special Trial Judge: This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993). The facts of the underlying transaction in this case are substantially identical to those in the Provizer case.

In a notice of deficiency dated May 31, 1989, respondent determined a deficiency in petitioners' joint 1981 Federal income tax in the amount of $109,168.19 (in addition to $29,995 previously assessed as a deficiency) and additions to tax for that year in the amount of $41,748.95 under section 6659 for valuation overstatement, in the amount of $6,958 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment attributable to negligence.[2] Respondent also

---

[1](...continued)
Procedure.

[2] In the May 31, 1989, notice of deficiency, respondent also determined a deficiency in and additions to petitioners' Federal income tax for taxable year 1982. The deficiency and additions to tax determined for 1982 have been settled by the parties and are no longer at issue. Petitioners have conceded that the statute of limitations on the assessment of income tax due from
(continued...)

determined that interest on deficiencies accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c) with respect to part of petitioners' underpayment of tax for 1981.

Prior to issuance of the May 31, 1989, notice of deficiency, petitioners agreed to an adjustment of losses relating to a partnership not at issue herein, Ethynol Cogeneration Associates. On November 1, 1990, the parties filed a Stipulation settling adjustments contained in the May 31, 1989, notice of deficiency regarding petitioners' interest in Gainesville Associates (Gainesville), a limited partnership.[3]  On March 7, 1994, the parties filed a Stipulation of Settled Issues with respect to items claimed on petitioners' Federal income tax returns resulting from their participation in the Plastics Recycling Program.  The parties stipulated that petitioners are not entitled to any deductions, losses, investment credits, business energy investment credits, or any other tax benefits claimed on

_____

[2](...continued)
petitioners for the taxable years 1981 and 1982 had not expired on May 31, 1989, the date when respondent mailed the notice of deficiency.

[3]    Petitioners conceded disallowance of losses claimed in 1981 in the amount of $91,367 and in 1982 in the amount of $89,710, and the additional interest under sec. 6621(c) on the deficiencies arising from the disallowed losses.  Respondent conceded all penalties asserted relating to petitioners' investment in Gainesville in 1981 and 1982, except for the sec. 6621(c) additional interest.

their tax returns as a result of their participation in the Plastics Recycling Program.

The issues for decision are: (1) Whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2); (2) whether petitioners are liable for the addition to tax under section 6659 for an underpayment of tax attributable to valuation overstatement; and (3) whether petitioners are liable for increased interest under section 6621(c).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners resided in Clifton, New Jersey, when their petition was filed.

During 1981, Leon Atkind (petitioner) was an executive with NBO Stores Inc. (NBO), a discount store chain founded and owned by him. His spouse, petitioner Belle Atkind, was also employed as an executive at NBO during that year. On their 1981 Federal income tax return, petitioners reported gross income from wages, interest, dividends, capital gains, and other sources in the amount of $363,705. Consequently, in the absence of significant deductions or credits, they were subject to payment of Federal income taxes in substantial amounts for 1981.

In 1981, petitioner acquired a 3.094-percent limited partnership interest in Hyannis Recycling Associates (Hyannis)

for his investment of $25,000. As a result of the passthrough from Hyannis, petitioners deducted on their 1981 Federal income tax return an operating loss in the amount of $20,326 and claimed investment tax and business energy credits totaling $39,604. The underlying deficiency in this case results from respondent's disallowance of petitioners' claimed operating loss and credits related to Hyannis for 1981.

The underlying transaction in this case was found by this Court to be the initial Plastics Recycling transaction in Provizer v. Commissioner, supra, and may be summarized as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold six Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $5,400,000 ($900,000 each), of which $340,000 was to be paid in cash. ECI Corp., in turn, resold the recyclers to the Hyannis limited partnership for $6,400,000 ($1,066,666 each), of which $440,000 was paid in cash. Hyannis then leased the recyclers to FMEC, which subleased them back to PI. All of the monthly payments for nonrecourse notes, leases, and licenses, which were required among the entities in the above transactions, offset each other. These transactions were accomplished simultaneously.

After the Hyannis offering closed, the safe-harbor leasing rules were enacted as part of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172. The underlying transaction was restructured in a manner designed to take

advantage of the safe-harbor provisions. F & G corporation became the safe-harbor lessor and was interposed between ECI and the primary leasing partnership, in this case Hyannis. Subsequent Plastics Recycling programs were structured in a similar manner to take advantage of the new statutory safe-harbor opportunities. See Provizer v. Commissioner, supra. We refer to the transactions herein collectively as the Hyannis transaction.

In the Provizer case, we considered such a restructured Plastics Recycling transaction, the Clearwater transaction. In the Clearwater transaction, PI sold six EPE recyclers to ECI Corp. for $981,000 each. ECI Corp., in turn, resold the recyclers to F & G Corp. for $1,162,666 each. F & G then leased the recyclers to Clearwater, which licensed them to FMEC, which sublicensed them to PI. The transaction involved herein differed from the Clearwater transaction in the following respects: (1) F & G purchased the recyclers for $6,400,000, rather than the $6,975,996 paid in Clearwater, and (2) Hyannis, rather than Clearwater, leased the recyclers from F & G and then licensed them to FMEC.[4] In all other material respects the transactions are substantively identical. Hyannis is thus like Clearwater, occupying the same link in the transactional chain. In addition,

---

[4] There is no explanation in the record as to why the six recyclers were sold to F & G for $6,400,000 in the Hyannis transaction but later the same number of identical machines sold for $6,975,996 in subsequent Plastics Recycling transactions. We note that the Hyannis partnership initially closed at the lower price prior to the enactment of the safe-harbor legislation, and subsequently the arrangement was modified in an attempt to take advantage of those rules by inserting F & G in the transaction.

the Sentinel EPE recyclers considered in this case are the same type of machines considered in Provizer. The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000.

PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC Corp. based on the quality and amount of recycled scrap.

Petitioner is a sophisticated and very successful businessman, entrepreneur, and investor. After graduating from high school, petitioner attended Patterson Junior College for 1 year, and then the City College of New York for approximately 3 years at night. Petitioner pursued a major in philosophy and received 2 years' worth of credits for the night classes. Petitioner started working at age 9, delivering newspapers out of his father's general store. Petitioner later employed others to deliver newspapers and also sold food and merchandise from his father's general store to his newspaper customers. Petitioner continued his newspaper delivery and merchandising business until he married at age 18. Then he started a business selling hosiery by telephone.

Petitioner prospered in the hosiery telemarketing business and soon began manufacturing hosiery as well. That business was expanded to include manufacturing knitwear, as well as hosiery. Eventually, this business involved importing, manufacturing, and selling on a national basis. In time, petitioner sold that

business and started a new business known as NBO. NBO was a discount retail store chain which sold menswear. Petitioner sold half of NBO to a Canadian business conglomerate in 1984, but he continued to run the business. In 1988, petitioner sold his remaining interest in NBO for $25,000,000.

Petitioner was an active investor in the 1980's. Between 1980 and the date of trial, petitioner estimated that he invested approximately $16,000,000 in somewhere between 65 and 70 different enterprises. Petitioner generally relied on his own judgment in evaluating proposed investments under $100,000; for larger investments he sought out professional guidance or counsel.

Petitioner learned of the Hyannis investment through an acquaintance, Elliot I. Miller (Miller). At that time, Miller was a practicing attorney who was experienced in tax matters and was employed as corporate counsel to PI. Miller was a shareholder in F & G in 1981. He shared office space with Raymond Grant (Grant) and Richard Roberts (Roberts) from 1982 through 1984. Grant was the 100-percent owner of the stock of ECI. Miller represented Grant personally and Grant's clients who invested in other programs that Grant promoted. Miller recommended that petitioner speak with Roberts about proposed investments.

Roberts was a businessman and the general partner in a number of limited partnerships that leased Sentinel EPE recyclers, including Hyannis. Roberts was also a 9-percent

shareholder in F & G.  Grant and Roberts have been general partners together in other investments.  The Hyannis offering memorandum disclosed that Roberts and Grant could each be deemed promoters of Hyannis and that Miller represented Grant.  Roberts mailed petitioner a copy of the Hyannis offering memorandum.  Petitioner reviewed the offering memorandum and directed his questions to Roberts.  Based on the information provided by these sources, and his personal judgment, petitioner invested in Hyannis.

Petitioners do not have any education or work experience in plastics recycling or plastics materials.  Petitioner did not investigate PI.  Petitioners did not see a Sentinel recycler before investing in Hyannis.

OPINION

In Provizer v. Commissioner, T.C. Memo. 1992-177, a test case involving the Clearwater transaction and another tier partnership, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c).  In reaching the conclusion that the Clearwater

transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers.

The underlying transaction in this case (the Hyannis transaction) is in all material respects identical to the transaction considered in the Provizer case. The Sentinel EPE recyclers considered in this case are the same type of machines considered in the Provizer case.

Based on the entire record in this case, including the extensive stipulations, testimony of respondent's experts, and petitioner's testimony, we hold that the Hyannis transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Respondent is sustained on the question of the underlying deficiency. We note that petitioner has conceded this issue in a Stipulation of Settled Issues filed shortly before trial. The record plainly supports respondent's determination regardless of this concession. For a detailed discussion of the facts and the applicable law in a substantially identical case, see Provizer v. Commissioner, supra.

Issue 1. Sec. 6653(a) Negligence

Respondent determined that petitioners were liable for the additions to tax under section 6653(a)(1) and (2). Petitioners have the burden of proving that respondent's determination of an addition to tax is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. In cases involving negligence, an additional amount is added to the tax under section 6653(a)(2); such amount is equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973).

Petitioners contend that they were reasonable in claiming deductions and credits with respect to their investment in Hyannis and attempt to distinguish the instant case from Provizer v. Commissioner, supra, by arguing: (1) Petitioner acted reasonably in relying upon the offering memorandum and the advice and representations of Miller and Roberts; and (2) petitioner is not a well-educated, sophisticated investor and was not seeking to shelter income through Hyannis.

When petitioners claimed the disallowed deductions and tax credits, they had no knowledge of the plastics or recycling industries and no engineering or technical background. There is nothing in the record indicating that petitioners independently

investigated the Sentinel EPE recyclers or knew anything about their value. Petitioner essentially argues that he reasonably relied on the purported value of the Sentinel EPE recyclers set out in the offering memorandum and on the statements made by or on behalf of the promoters.

Under some circumstances a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if reasonable reliance on a competent professional adviser is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see Weis v. Commissioner, 94 T.C. 473, 487 (1990); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974).

Reliance on representations by insiders, promoters, or offering materials has been held an inadequate defense to negligence. LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without

published opinion 921 F.2d 280 (9th Cir. 1991); McCrary v. Commissioner, 92 T.C. 827, 850 (1989); Rybak v. Commissioner, 91 T.C. 524, 565 (1988). We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447.

Petitioner's investigation of the Hyannis transaction did not extend beyond discussions with Miller and Roberts and a review of the offering memorandum. Petitioner had met Miller, and Miller had urged him to consider Roberts' proposals. Petitioner had taken no action on several deals proposed by Roberts, but the plastics recycling idea interested him. Moreover, petitioner testified that because he knew Miller personally and had a lot of confidence in him, petitioner decided to look into the plastics recycling proposal. Petitioner did not explain exactly why he had any confidence in Miller. The record is devoid of any history of past dealings between petitioner and Miller on either a personal or professional basis. Nonetheless, petitioner's purported confidence in Miller is petitioner's only explanation of his reason for considering the recycling proposal and for failing to make any investigation of Roberts.

Petitioner indicated some interest when Roberts called about the plastics recycling deal, and a copy of the Hyannis offering memorandum was sent to petitioner. Petitioner testified that he

did not read the entire opinion letter included in the offering memorandum. At trial petitioner could not recall the name of the equipment involved, the value of the equipment, or that the offering memorandum disclosed Miller's relationship with PI. Petitioner was invited to see the Sentinel EPE recycler but declined because he "wasn't disposed to do that." Petitioner testified that he had some conversations with Roberts after reviewing the offering memorandum, but he could not recall the particulars of those conversations. Petitioner could only surmise that because he proceeded with the investment, he must have received "answers that apparently satisfied" him.

We find petitioner's purported reliance on Miller and Roberts was not reasonable, not in good faith, nor based upon full disclosure. The record does not show that either Miller or Roberts possessed any special qualifications or professional skills in the recycling or plastics industries. Miller was corporate counsel to PI and Roberts was general partner and a promoter of Hyannis. See Vojticek v. Commissioner, T.C. Memo. 1995-444, to the effect that advice from such persons "is better classified as sales promotion". Moreover, petitioner's testimony indicates that he relied more on his personal judgment or instincts in making the investment than any conversations he may have had with Miller and Roberts. A self-described risk taker and marketing person, petitioner testified that when he first heard of the plastics recycling transaction, "it struck a chord for whatever reason" and sounded like a viable idea. Petitioner

testified that he typically relied on his own judgment for investments under $100,000; his investment in Hyannis was in the amount of $25,000. When asked who he relied upon in making the Hyannis investment, petitioner replied, "My own judgment."

Petitioner attempts to distinguish himself from the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, by arguing that he was not an educated, sophisticated investor and attorney seeking to shelter income. However, while petitioner did not receive a college degree, he did receive some higher education and he was anything but unsophisticated in business and investing. Petitioner's entrepreneurial spirit, energy, and business acumen led to the creation and prosperity of various apparel businesses. Petitioner's business ventures culminated in the founding of NBO, a business which became so successful petitioner was able to sell half of it for $25,000,000 in 1988. In addition, from 1980 to the time of trial, petitioner invested approximately $16,000,000 in upwards of 70 ventures. In light of petitioner's remarkable and impressive business success and extensive investing activity, the fact that he never received a college degree does not persuade us that he was an unsophisticated businessman or investor.

Similarly, we are not persuaded that petitioner lacked interest in the tax benefits generated by Hyannis. According to the Hyannis offering memorandum, the projected benefits for each $50,000 investor were investment tax credits in 1981 of $79,200 plus deductions in 1981 of $42,491. In the first year of the

investment alone, petitioners claimed an operating loss in the amount of $20,326 and investment tax and business energy credits related to Hyannis totaling $39,604, while petitioners' investment in Hyannis was $25,000. The direct reductions in petitioners' Federal income tax, from just the tax credits, equaled 158 percent of their cash investment. Given petitioners' combined gross income of $363,705 for 1981, we find petitioner's alleged lack of interest in the tax benefits generated by Hyannis unconvincing.

Also, we are unpersuaded by petitioners' efforts to trivialize this case. The argument is that because of petitioner's heavy business responsibilities, his great wealth, and his substantial income, he could not be expected to spend much time on a mere $25,000 investment. In petitioner's words "because of the comparatively minimal amount, it did not get the diligence or the discretion that probably should have been given to it". In our view, despite petitioner's numerous and significant responsibilities, he is required to exercise due care with respect to his Federal income taxes. Obviously, there is no rule permitting wealthy people to be negligent with respect to claims of tax benefits but imposing penalties on those with less income who claim the same benefits. Moreover, the record here demonstrates that the tax benefits of the Hyannis deal were not trivial to petitioner. While petitioner paid $25,000 for his share of Hyannis, on his 1981 tax return he indicated ownership of investment property of $198,016 related to Hyannis, and that

amount is significant, even on petitioners' tax return.
Moreover, petitioner reported total tax of $97,751 for 1981, but
reached that figure by claiming $39,604 in investment tax and
business energy credits related to Hyannis and an operating loss
of $20,326. Consequently, we consider the trivialization
argument inappropriate and inaccurate. Petitioners' tax benefits
claimed with respect to Hyannis were not negligible--even for
them.

Petitioners have not distinguished their situation from that
of the taxpayers in Provizer v. Commissioner, supra, where the
negligence additions to tax were upheld. We hold, upon
consideration of the entire record, that petitioners are liable
for the negligence additions to tax under the provisions of
section 6653(a)(1) and (2). Respondent is sustained on this
issue.

## Issue 2. Sec. 6659 Valuation Overstatement

Respondent determined that petitioners are liable for the
section 6659 addition to tax for valuation overstatement on the
portion of their 1981 underpayment attributable to the tax
benefits claimed with respect to Hyannis. A graduated addition
to tax is imposed when an individual has an underpayment of tax
that equals or exceeds $1,000 and "is attributable to" a
valuation overstatement. Sec. 6659(a), (d). A valuation
overstatement exists if the fair market value (or adjusted basis)
of property claimed on a return equals or exceeds 150 percent of
the amount determined to be the correct amount. Sec. 6659(c).

If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment. Sec. 6659(b).

Petitioners claimed an operating loss and investment tax credits based on purported values of $1,066,666 for each Sentinel EPE recycler. Petitioners stipulated that the fair market value of each recycler was not in excess of $50,000. Therefore, if disallowance of petitioners' claimed tax benefits is attributable to the valuation overstatement, petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the tax benefits claimed with respect to Hyannis.

Section 6659 does not apply to underpayments of tax that are not "attributable to" valuation overstatements. See McCrary v. Commissioner, 92 T.C. 827 (1989); Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988). To the extent taxpayers claim tax benefits that are disallowed on grounds separate and independent from alleged valuation overstatements, the resulting underpayments of tax are not regarded as attributable to valuation overstatements. Krause v. Commissioner, 99 T.C. 132, 178 (1992) (citing Todd v. Commissioner, supra), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994). However, when valuation is an integral factor in disallowing deductions and credits, section 6659 is applicable. See Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992) (section 6659 addition to tax applies if a

finding of lack of economic substance is "due in part" to a valuation overstatement), affg. T.C. Memo. 1991-449; <u>Gilman v. Commissioner</u>, 933 F.2d 143, 151 (2d Cir. 1991), affg. T.C. Memo. 1989-684; <u>Masters v. Commissioner</u>, T.C. Memo. 1994-197; <u>Harness v. Commissioner</u>, T.C. Memo. 1991-321.

In the Stipulation of Settled Issues, petitioners conceded that they "are not entitled to any deductions, losses, investment credits, business energy investment credits or any other tax benefits claimed on their tax returns as a result of their participation in the Plastics Recycling Program".  In <u>Todd v. Commissioner</u>, <u>supra</u>, and <u>McCrary v. Commissioner</u>, <u>supra</u>,  we denied application of section 6659, even though the subject property was overvalued, because the related deductions and credits had been conceded or denied in their entirety on other grounds.  In <u>Todd</u>, we found that an underpayment was not attributable to a valuation overstatement because property was not placed in service during the years in issue.  In <u>McCrary</u>, we found the taxpayers were not liable for the section 6659 addition to tax when, prior to the trial of the case, the taxpayers conceded that they were not entitled to the investment tax credit because the agreement in question was a license and not a lease. In both cases, the underpayment was attributable to something other than a valuation overstatement.

This Court has held that concession of the investment tax credit in and of itself does not relieve taxpayers of liability for the section 6659 addition to tax.  <u>Dybsand v. Commissioner</u>,

T.C. Memo. 1994-56; Chiechi v. Commissioner, T.C. Memo. 1993-630. Instead, what is significant is the ground upon which the investment tax credit is disallowed or conceded. Chiechi v. Commissioner, supra. Even in situations in which there are arguably two grounds to support a deficiency and one supports a section 6659 addition to tax and the other does not, the taxpayer may still be liable for the addition to tax. Gainer v. Commissioner, 893 F.2d 225, 228 (9th Cir. 1990), affg. T.C. Memo. 1988-416; Irom v. Commissioner, 866 F.2d 545, 547 (2d Cir. 1989), vacating in part and remanding T.C. Memo. 1988-211; Harness v. Commissioner, supra.

In petitioner's case, there was no argument made and no evidence presented showing that disallowance and concession of the claimed tax benefits, including the investment tax credits, related to anything other than a valuation overstatement. To the contrary, petitioners stipulated substantially the same facts concerning the underlying transactions as we found in Provizer v. Commissioner, supra. In the Provizer case, we held that the taxpayers were liable for the section 6659 addition to tax because the underpayment of taxes was directly related to the overvaluation of the Sentinel EPE recyclers. The overvaluation of the recyclers, exceeding 2325 percent, was an integral part of our findings in Provizer that the transaction was a sham and lacked economic substance. Similarly, the record in this case plainly shows that the overvaluation of the recyclers was

integral to and was the core of our holding that the underlying transaction herein was a sham and lacked economic substance.

Consistent with our findings in Provizer, petitioners stipulated that the Hyannis partnership had no net equity value, that Hyannis' sole activity lacked any potential for profit, and that the Hyannis transaction therefore lacked economic substance. When a transaction lacks economic substance, section 6659 will apply because the correct basis is zero and any basis claimed in excess of that is a valuation overstatement. Gilman v. Commissioner, supra; Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988); Zirker v. Commissioner, 87 T.C. 970, 978-979 (1986); Donahue v. Commissioner, T.C. Memo. 1991-181, affd. without published opinion 959 F.2d 234 (6th Cir. 1992), affd. sub nom. Pasternak v. Commissioner, 990 F.2d 893 (6th Cir. 1993).

We held in Provizer v. Commissioner, T.C. Memo. 1992-177, that each Sentinel EPE recycler had a fair market value not in excess of $50,000. Our finding in the Provizer case that the Sentinel EPE recyclers had been overvalued was integral to and inseparable from our finding of a lack of economic substance. Petitioners conceded that the Hyannis transaction was similar to the Clearwater transaction described in Provizer v. Commissioner, supra, and that the Hyannis transaction lacked economic substance. Given those concessions, and the fact that the record here plainly shows that the overvaluation of the recyclers was the primary reason for the disallowance of the claimed tax benefits, and the fact that no argument was made and no evidence

was presented to the Court to prove that disallowance and concession of the claimed tax benefits related to anything other than a valuation overstatement, we conclude that the deficiency caused by the disallowance of the claimed tax benefits was attributable to the overvaluation of the Sentinel EPE recyclers.

Finally, we consider petitioners' express argument as to waiver of the addition to tax. On brief, petitioners contested imposition of the section 6659 addition to tax on the grounds that respondent erroneously failed to waive the penalty. Section 6659(e) authorizes respondent to waive all or part of the addition to tax for valuation overstatements if taxpayers establish that there was a reasonable basis for the adjusted bases or valuations claimed on the returns and that such claims were made in good faith. Respondent's refusal to waive a section 6659 addition to tax is reviewable by this Court for abuse of discretion. Krause v. Commissioner, 99 T.C. at 179.

Petitioner arrived at the claimed valuation by virtue of his purported reliance on Miller and Roberts, in addition to the representations and evaluations contained in the offering memorandum. He contends that such reliance was reasonable and, therefore, respondent should have waived the section 6659 addition to tax.

We have found that petitioner's purported reliance on Miller, Roberts, and the offering memorandum was not reasonable. Miller was corporate counsel to PI, and Roberts was a promoter of Hyannis. See Vojticek v. Commissioner, T.C. Memo. 1995-144,

rejecting advice from such persons. Neither Miller or Roberts knew anything about plastics or plastics recycling. The evaluators whose reports were appended to the offering memorandum each owned interests in partnerships which leased Sentinel EPE recyclers. The offering memorandum contained numerous caveats, including the following: NO OFFEREE SHOULD CONSIDER THE CONTENTS OF THIS MEMORANDUM *** AS *** EXPERT ADVICE. EACH OFFEREE SHOULD CONSULT HIS OWN PROFESSIONAL ADVISERS. Petitioner did not see a Sentinel EPE recycler prior to investing in Hyannis, and he presented no evidence that he independently investigated the recyclers.

Petitioner also contends that he did not know and could not know of any comparable product by which to compare prices because one did not exist. In fact, there were at least four other plastics recycling machines available during 1981, ranging in price from $20,000 to $200,000: Foremost Densilator, Nelmor/Weiss Densification System (Regenolux), Buss-Condux Plastcompactor, and Cumberland Granulators. See Provizer v. Commissioner, supra. Moreover, petitioners stipulated that information published prior to the plastics recycling transactions indicated that several similar machines were already on the market.

Petitioners did not have a reasonable basis for the adjusted bases or valuations claimed on their 1981 return with respect to their investment in Hyannis. Accordingly, respondent properly found that petitioner's purported reliance on Miller, Roberts,

and the appraisal in the promotional materials was unreasonable. The record does not establish an abuse of discretion on the part of respondent but supports respondent's position. We hold that respondent's refusal to waive the section 6659 addition to tax is not an abuse of discretion. Petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credits for 1981. Respondent is sustained on this issue.

Issue 3. Sec. 6621(c) Tax Motivated Transactions

Respondent determined that interest on deficiencies accruing after December 31, 1984, would be calculated under section 6621(c). The annual rate of interest under section 6621(c) equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions. An underpayment is substantial if it exceeds $1,000. Sec. 6621(c)(2).

The term "tax motivated transaction" includes "any sham or fraudulent transaction." Sec. 6621(c)(3)(A)(v). In this case, petitioners stipulated that the Hyannis transaction lacked economic substance. Transactions devoid of economic substance are sham transactions for purposes of section 6621(c)(3)(A)(v). Friendship Dairies, Inc. v. Commissioner, 90 T.C. 1054, 1068 (1988); Cherin v. Commissioner, 89 T.C. 986, 1000 (1987). Therefore, by definition the Hyannis transaction is tax motivated under section 6621(c)(3)(A)(v). Moreover, the term "tax motivated transaction" includes any section 6659(c) valuation

overstatement.  Sec. 6621(c)(3)(A)(i).  In 1981, petitioners claimed a value for the recyclers in excess of 150 percent of the true value of the recyclers.  Therefore, petitioners had a valuation overstatement as defined in section 6659(c).

For section 6621(c) interest to apply, the underpayment of taxes must be "attributable to" a tax-motivated transaction. Where a valuation overstatement or other category of tax-motivated transaction is an integral part of, or inseparable from, the ground for disallowance of an item, section 6621(c) increased interest applies.  See McCrary v. Commissioner, 92 T.C. at 859.  Petitioners stipulated that the Hyannis transaction lacked economic substance and conceded respondent's disallowance of their claimed deductions and credits related to Hyannis.  By virtue of its lack of economic substance and the overvaluation of the Sentinel EPE recyclers, the Hyannis transaction is by definition a sham transaction.  Moreover, we have already found that the valuation overstatement of the recyclers was an integral part of the ground for disallowance of the items related to Hyannis.  Accordingly, respondent's determination as to the applicable interest rate for deficiencies attributable to tax-motivated transactions is sustained, and the increased rate of interest applies for the taxable year in issue.

To reflect concessions and our conclusions,

Decision will be entered

under Rule 155.